IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF IOWA
Davenport Division

| | | |
|---|---|---|
| AUDIO ODYSSEY, LTD.,<br>DOGAN A. DINCER, and<br>ANN M. DINCER, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3-99-10161 |
| | ) | |
| UNITED STATES OF AMERICA and<br>THE UNITED STATES SMALL<br>BUSINESS ADMINISTRATION, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' SUPPLEMENTAL MOTION TO DISMISS OR,
IN THE ALTERNATIVE, FOR SUMMARY OR PARTIAL
<u>SUMMARY JUDGMENT AND TO STRIKE JURY DEMAND</u>**

# TABLE OF CONTENTS

Page No.

INTRODUCTORY STATEMENT .................................................................................1

BACKGROUND OF THE CASE ...............................................................................2

FACTUAL BACKGROUND ........................................................................................3

ARGUMENT ...............................................................................................................3

I. DOGAN AND ANN DINCER LACK STANDING BECAUSE THEIR ALLEGED
INJURIES ARE NOT DISTINCT FROM THOSE OF THE COMPANY ......................5

II. THE NEGLIGENCE CLAIMS ARE NOT COGNIZABLE UNDER IOWA LAW ..............6

    A. Plaintiffs Cannot Recover Any Of The Damages Sought On Negligence Claims ............7

    B. Plaintiffs Cannot Recover On A Claim That The SBA Breached A "Good Samaritan"
    Duty Absent Physical Injury ...................................................................................9

III. PLAINTIFFS' CLAIM THAT THE SBA NEGLIGENTLY FAILED TO PERFORM A
FIELD VISIT IS UNTENABLE ...............................................................................11

IV. THE NEGLIGENCE CLAIMS BASED UPON THE ALLEGED ABSENCE OF A
LIQUIDATION PLAN IS INVALID ........................................................................12

    A. The Liquidation Plan Is Not A Service Rendered To Protect Borrowers And Cannot
    Support A Claim Based Upon A Breach of the Duty in Section 324A .....................13

    B. The SBA's Recognized Discretion Whether To Permit Liquidation Precludes The Claims
    That The SBA Negligently Failed to Prepare a Liquidation Plan ............................16

V. PLAINTIFFS' CLAIM THAT THE SBA FAILED TO ADVISE THE BANK THAT IT WAS
TO TAKE NO ACTION WITHOUT SBA'S CONSENT LACKS MERIT .....................17

VI. PLAINTIFFS' THIRD-PARTY CONTRACT CLAIM IS FACIALLY WITHOUT MERIT
AND IS BARRED BY THE BANK'S WAIVER OF THIS CLAIM ...............................18

    A. Plaintiffs Cannot Enforce A Contract Provision That Does Not Impose A Duty Upon the
    SBA...................................................................................................................19

    B. Plaintiffs' Contract Claim Is Invalid Because It Was Waived By The Bank ..................21

VII. SUMMARY JUDGMENT IS APPROPRIATE BECAUSE THE SBA WAS NOT THE
ACTUAL OR PROXIMATE CAUSE OF ANY INJURY TO PLAINTIFFS ....................23

VIII. THE COURT SHOULD STRIKE THE JURY DEMAND IF IT DOES NOT DISMISS OR
    ENTER JUDGMENT FOR THE SBA ON ALL CLAIMS ........................................27

CONCLUSION ............................................................................................................27

# INTRODUCTORY STATEMENT

Defendants, the United States of America and the United States Small Business Administration (collectively referred to as the "SBA"), by and through their undersigned counsel, respectfully submit this Memorandum of Points and Authorities in support of their Supplemental Motion to Dismiss or, in the Alternative, for Summary Judgment.

This case was recently on appeal to the United States Court of Appeals for the Eighth Circuit ("Eighth Circuit"), which affirmed this Court's entry of summary judgment for defendants on plaintiffs' interference with contract claim (Count III), and reversed summary judgment for the SBA with respect to the negligence (Count I) and contract (Count II) claims. The claims relate to liquidation actions by Brenton First National Bank ("Brenton Bank") in connection with a loan that plaintiff Audio Odyssey Ltd. ("Audio") obtained from the bank with an SBA guaranty ("Audio Loan"), and the SBA's alleged failures in approving these actions by the bank.

Dismissal or summary judgment for defendants is appropriate because plaintiffs Dogan and Ann Dincer lack standing to assert any claim on behalf of a business. Plaintiffs' tort claims are also barred because Iowa law prohibits parties from asserting negligence claims to recover any of the damages sought herein (economic losses, damage to reputation, and pain and suffering outside of physical injury or highly limited circumstances), and for other reasons. Further, plaintiffs' contract claim that SBA breached an agreement with Brenton Bank by giving verbal, rather than written consent, to bring suit is also invalid. First, plaintiffs cannot enforce a contract provision that did not impose any duty upon SBA. Second, as third-party beneficiaries, plaintiffs "step into the shoes" of the bank, and thus are subject to the defense that the bank waived any right to sue based upon SBA's failure to give written consent. Finally, there is no valid argument that SBA was the proximate cause of any alleged injury to Audio either in tort or contract.

Defendants respectfully move the Court to dismiss the claims asserted by plaintiffs Dogan and Ann Dincer for lack of standing; and dismiss all claims either for the lack of subject matter jurisdiction under Rule 12(b)(1) or as failing to state cognizable claims under Rule 12(b)(6). Alternatively, defendants move for summary judgment under Rule 56(b)on all claims. To the extent that the Court does not dismiss or enter judgment for SBA on all claims, defendants move the Court to dismiss or enter partial summary judgment on those claims deemed legally or otherwise invalid, and move to strike plaintiffs' demand for a jury trial.

## BACKGROUND OF THIS CASE

Plaintiffs filed their Complaint on September 10, 1999, but did not properly serve the Government until November 29, 1999. Defendants filed their initial Motion to Dismiss or, in the Alternative, For Summary Judgment on January 31, 2000. This Court granted summary judgment for the defendants on all three Counts on June 30, 2000 (Docket #39) (hereinafter "Summary Judgment Order"). On July 5, 2001, the Eighth Circuit, issued an opinion reversing the decision as to Counts I (negligence) and II (breach of contract), and affirming summary judgment as to Count III (interference with contract). Audio Odyssey, Ltd. v. United States, 255 F.3d 512 (2001). Defendants filed a petition for rehearing regarding Count II, which the Eighth Circuit denied on November 2, 2001. Thus, although this suit has been pending for some time, the status of the case is still at a preliminary posture because defendants have never filed an Answer.

After the appeal, only the following claims remain in this case: (1) the SBA negligently failed to inform the Bank that it was to take no action, including making a demand or file suit without SBA's written approval (Count I); (2) the SBA negligently and in breach of its contractual duty failed to give written consent for the bank to sue (Counts I and II); (3) the SBA negligently failed to conduct, or have the bank conduct, a field visit (Count I); and (4) the SBA negligently

failed to prepare, or have the bank prepare, a liquidation plan (Count I). 255 F.3d at 517-19.

In a separate, but related case, the plaintiffs brought suit against Brenton Bank, officials of that bank, an SBA employee, and various members of the Scott County Sheriff's Office also relating to the injuries allegedly resulting from the liquidation of their business (hereinafter referred to as the "Companion Case"). The Eighth Circuit also issued a decision affirming in many respects this Court's entry of summary judgment on those claims, Audio Odyssey, Ltd. v. Brenton Bank, 245 F.3d 721 (2001), opinion reinstated en banc, 286 F.3d 498 (2002).

## FACTUAL BACKGROUND

Defendants respectfully incorporate by reference the discussion of the SBA 7(a) guarantee loan program and the factual background set forth in defendants' Original Memorandum of Points and Authorities filed in support of their initial Motion to Dismiss or, in the Alternative, for Summary Judgment (Docket # 8, accepted by the Clerk on February 2, 2000). Defendants also rely on their Statement of Material Facts, and the Exhibits filed in support of that Original motion.[1] The Court adopted many of these facts in its Summary Judgment Order.

## ARGUMENT

Defendants move to dismiss this action for lack of subject matter jurisdiction, under Fed.

---

[1] In this Brief, Defendants' original Motion to Dismiss or, in the Alternative, for Summary Judgment will be referred to as "Defendant's Original Motion". Defendants' Statement of Material Facts As To Which Defendants Contend There Is No Genuine Dispute, submitted with that Motion will be referred to as "Fact Statement", followed by the paragraph ("par.") number. Defendants' Exhibits to that Motion will be abbreviated as "Defs. Ex", and Attachments to Exhibits will be abbreviated as "Att." Supplemental Exhibits filed in support of the instant motion will be abbreviated as "Defs. Supp. Ex." Plaintiffs' Memorandum of Points and Authorities In Support of Plaintiffs' Resistance To Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment will be abbreviated as "Resistance."

R. Civ. P. 12(b)(1), and for the failure to state a claim for which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss, a court should accept as true all factual allegations in the complaint. McSherry v. Trans World Airlines, Inc., 81 F.3d 739, 740 (8th Cir. 1996) (citing Leatherman v. Tarrant Co. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 163-65 (1993)). Although a court may grant a motion to dismiss "only if no set of facts would entitle the plaintiff to relief", "conclusory allegations of law and unwarranted inferences are insufficient" to defeat a motion. In re Syntex, 95 F.3d 922, 926 (8th Cir. 1996). District courts may consider matters outside the pleadings on a motion that challenges subject matter jurisdiction under Rule 12(b)(1). Drevlow v. Lutheran Church, Missouri Synod, 991 F.2d 468, 470 (8th Cir. 1993); Osborn v. United States, 918 F.2d 724, 729 (8th Cir.1990). [2]

Defendants alternatively seek summary judgment under Rule 56(b) to the extent the Court must look to matters beyond the Complaint to resolve the motion other than to determine jurisdiction. See Fed. R. Civ. P. 12(b). Rule 56 provides that "judgment shall be rendered forthwith if ... there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To show that a "genuine issue exists for trial," Rule 56(e) provides that the nonmoving party may not rely upon "mere allegations or denials," but "must set forth specific facts" through affidavits or other evidence A fact is "material" if it is "critical" to the "legal elements of the claim" according to substantive law; "[f]actual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty

---

[2] "[I]f a complaint is accompanied by attached documents, .... these documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim." Roth v. Garcia Marquez, 942 F.2d 617, 625 n.1 (9th Cir. 1991) (citations, brackets omitted).

Lobby, Inc., 477 U.S. 242, 248 (1986).[3]

## I.  DOGAN AND ANN DINCER LACK STANDING BECAUSE THEIR ALLEGED INJURIES ARE NOT DISTINCT FROM THOSE OF THE COMPANY.

In the Companion Case, the Eighth Circuit affirmed this Court's ruling that Mr. and Mrs. Dincer lack standing to assert claims relating to the liquidation actions by Brenton Bank and others in connection with the Audio loan because any injury that allegedly occurred was suffered only by the company. Similarly, in this case, plaintiffs Dogan and Ann Dincer lack standing and their claims should dismissed for lack of jurisdiction under Rule 12(b)(1).

A party's lack of standing precludes Article III jurisdiction. "The standing requirement is, at its core, a constitutionally mandated prerequisite for federal jurisdiction, and 'an essential and unchanging part of the case-or-controversy requirement of Article III.'" Mausolf v. Babbitt, 85 F.3d 1295, 1301 (8th Cir. 1996) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)); accord Johnson v. Missouri, 142 F.3d 1087, 1088 (8th Cir. 1998). "'To establish standing, a party must, at a minimum, have suffered an "injury-in-fact," fairly traceable to the defendant's conduct, which is likely to be redressed by a favorable decision.'" Johnson, 142 F.3d at 1088 (quoting Brouhard v. Lee, 125 F.3d 656, 661 (8th Cir. 1997)).

In the Companion Case, the 8th Circuit held that:

It is well established that a shareholder or officer of a corporation cannot recover for legal injuries suffered by the corporation. .... Here, it was Audio Odyssey whose premises and personal property were taken, rightfully or not. Any constitutional

---

[3] Evidence that is "merely colorable or is not significantly probative" will not create a genuine issue of fact. Anderson, 477 U.S. at 249-50 (quotations omitted). "Summary judgment is mandated when the nonmoving party fails to introduce sufficient evidence to establish an essential element of the case for which that party would have the burden of proof at trial." Phillips v. The Marist Society of Washington Province, 80 F.3d 274, 275-76 (8th Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

violations presented by this case were visited upon Audio Odyssey, and any injuries to the Dincers occurred solely because of their relationship with Audio Odyssey. ....The Dincers seek redress for various emotional and reputational injuries stemming from the replevin of the Bank's collateral and the seizure of the premises, including the loss of business relationships with customers and suppliers. We do not think these injuries are "distinct" from the corporation's. A "distinct" injury is one in which the *claimant's* rights have been violated, not merely one in which the claimant is indirectly harmed because of one party's injury to another. The premises and replevined items belonged to the corporation, not the Dincers. Doubtless a sole shareholder may suffer shame and humiliation when the corporation is destroyed, but an "emotional injury" exception would swallow the rule against shareholder standing.

Audio Odyssey, 245 F.3d at 729 (citations omitted; emphasis by court).

The same result is warranted here. Plaintiff Dogan Dincer, is identified in paragraph 1 of the Complaint as the sole shareholder of Audio, and Ann Dincer, is identified in that same paragraph as merely a guarantor of the loan. All claims arise from the Audio Loan, the liquidation efforts by the bank with respect to Audio's collateral that secured that loan, and the SBA's alleged failures with respect to the approval of those efforts. As in the Companion Case, "any injuries to the Dincers occurred solely because of their relationship with Audio", and the injuries alleged by the Dincers, including their claims for "redress for various emotional and reputational injuries", are not "distinct" from any alleged injuries to Audio. Thus, there is no jurisdiction over the claims brought by Dogan and Ann Dincer due to their lack of standing.

## II.    THE NEGLIGENCE CLAIMS ARE NOT COGNIZABLE UNDER IOWA LAW.

The Federal Tort Claims Act ("FTCA") confers jurisdiction over certain tort claims "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The Act also provides that "[t]he United States shall be liable ... in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Thus, the United States can only be liable for those tort claims as to which the FTCA

waives sovereign immunity to the extent that a private party would be liable under state law. Central Airlines, Inc. v. United States, 169 F.3d 1174, 1175 (8th Cir. 1999) (per curiam); Klett v. Pim, 965 F.2d 587, 589 (8th Cir. 1992).

As discussed below, the FTCA does not waive the SBA's sovereign immunity from the plaintiffs' tort claims because (1) Iowa law does not permit the recovery of the damages sought herein through negligence claims; and (2) under Iowa law, plaintiffs cannot recover on a negligence claim that defendants breached the duty set forth in section 324A of the Restatement of Torts (Second) ("Restatement") because plaintiffs do not claim any physical injury. Therefore, the Court should dismiss all claims in Count I for lack of jurisdiction or as failing to state claims for which relief can be granted, or, alternatively, enter summary judgment for the SBA.

A. **Plaintiffs Cannot Recover Any Of The Damages Sought On Negligence Claims.**

Plaintiffs identified the damages they seek for their negligence claims as follows:

> As a direct and proximate result of one or more of the aforesaid negligent acts or omissions, plaintiffs sustained damages including the loss of their business, lost profits, damage to reputation, pain and mental anguish and loss of business opportunity.

Count I, ¶ 50. Under Iowa law none of these damages are recoverable on the negligence claims asserted herein, and, thus, all tort claims should be dismissed.

First, negligence claims cannot be asserted to recover damages for "damage to reputation." The Supreme Court of Iowa has held that "reputation damages are not a legal remedy available in a damage action premised on a defendant's negligent act." Lawrence v. Grinde, 534 N.W.2d 414, 420 (Iowa 1995).[4]

---

[4] To the extent that plaintiffs' alleged damage to reputation is based on a claim of libel or slander
*Footnote continued on next page*

Second, plaintiffs' are precluded from asserting negligence claims seeking compensation for "pain and mental anguish". It is well settled under Iowa law that "generally a party may not recover damages for emotional distress in an action premised on mere negligence where the plaintiff has suffered no physical harm," Lawrence v. Grinde, 534 N.W.2d at 420, unless "narrow circumstances" exist, id. at 423, such as the "negligent delivery of a telegram announcing the death of a loved one." Id. at 421 (citing Cowan v. Western Union Tel. Co., 98 N.W.2d 281, 282-84 (Iowa 1904)). Accord Dillon v. General Cas. Co. of Wisconsin, 975 F.2d 522, 524-25 (8th Cir. 1992) ("district court properly applied Iowa law to this case" when it held that "compensatory damages for emotional distress" were not recoverable on claims of negligent misrepresentation); Lamb v. Newton-Livingston, Inc., 551 N.W.2d 333, 339 (Iowa App. 1996).[5]

Third, all of the remaining damages sought by plaintiffs' tort claims: loss of business, lost profits and loss of business opportunity, seek economic damages which are not recoverable through negligence claims under Iowa law. The Supreme Court of Iowa has recognized "[t]he well-established general rule" that "a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable." Nebraska Innkeepers, Inc. v. Pittsburgh-Des Moines Corp., 345 N.W.2d 124, 126 (Iowa 1984). Accord Maynard Coop. Co. v. Zeneca, Inc., 143 F.3d 1099, 1102-03 (8th Cir. 1998)

---

Footnote continued from previous page

such claims would be barred by the FTCA retention of sovereign immunity for "[a]ny claim arising out of ... libel [or] slander ...." 28 U.S.C. § 2680(h); Anthony v. Runyon, 76 F.3d 210, (8th Cir. 1996); Moessmer v. United States, 760 F.2d 236, 237-38 (8th Cir. 1985); Anderson v. United States, 548 F.2d 249, (8th Cir. 1977) ("the claim based upon ...damage to [plaintiff's] reputation is also barred by the express provisions of § 2680(h)").

[5] Moreover, inasmuch as Dogan and Ann Dincer lack standing, the only remaining plaintiff, Audio, a corporation, clearly cannot recover damages for "pain and mental anguish".



(construing Iowa law, and holding that economic loss doctrine bars negligent misrepresentation claim seeking economic damages); <u>Ethyl Corp. v. BP Performance Polymers, Inc.</u>, 33 F.3d 23, 25 (8th Cir. 1994) ("Under Iowa law, a claim for purely economic losses is recoverable only in contract and not in tort law"); <u>Gunderson v. ADM Investor Servs., Inc.</u>, 85 F. Supp. 892, 922-23 (N.D. Iowa 2000) (construing Iowa law as barring negligence claim for purely economic loss)[6] Indeed, the Honorable Judge Pratt of this Court recently applied this doctrine as barring claims against the SBA asserted by a debtor on an SBA-guaranteed loan in <u>Mattes v. ABC Plastics, Inc.</u>, No. 3-01-CV-90064 (Oct. 22, 2001), <u>appeal docketed</u> No. 02-1161 (8th Cir.) (copy of Order attached as Defs. Supp. Ex. 1).

## B. Plaintiffs Cannot Recover On A Claim That The SBA Breached A "Good Samaritan" Duty Absent Physical Injury.

In the Summary Judgment Order (p.13), this Court found that "SBA may be held liable under the FTCA [if] its failure to exercise reasonable care in its role as 'protector' increased the risk of harm to plaintiffs, or [if] plaintiffs suffered harm because of their reliance upon SBA -- as required under Restatement sections 324A(a) and 324A(c) as adopted by Iowa." This Court further determined that SBA's review as to whether to undertake liquidation was akin to an inspection. It found support for its conclusion that the "good samaritan" doctrine in section 324A applied to this case based on the application of this section by other courts in determining

---

[6] The Iowa Supreme Court, in *Kemin Indus., Inc. v. KMPG Peat Marwick, LLP*, 578 N.W.2d 212 (Iowa 1998), appears to disagree with the interpretation of state law by the Eighth Circuit in *Ethyl Corp.* The *Kemin* court held that the economic loss doctrine might not bar a claim of professional negligence if such claim sought damages related to specific property. 578 N.W.2d at 220-21. In *Kemin*, the claim involved a "specifically identified account receivable", *id.* at 213, 221, which constituted a "chose in action ... recognized in our law as property." *Id.* at 221.

liability for a negligent inspection, including the Eighth Circuit in <u>Appley Brothers v. United States</u>, 164 F.3d 1164 (8th Cir. 1999). In <u>Appley Brothers</u>, the appellate court held that the U.S. Department of Agriculture had a duty under section 324A of the Restatement in inspecting grain warehouses for the benefit of the depositors of agricultural goods at those warehouses. <u>Appley Brothers</u>, however, was based on South Dakota law, and, as discussed below, is, thus, inapposite.

Since the Court issued the Summary Judgment Order, the Supreme Court of Iowa clarified its position regarding the assertion of negligent inspection claims under section 324A of the Restatement in <u>Thiesen v. Covenant Medical Center, Inc.</u>, 636 N.W.2d 74 (Iowa Nov. 15, 2001). The plaintiff, Thiesen, claimed that he was wrongfully discharged from his employment, and that his employer was negligent in conducting an investigation of the facts leading up to his discharge. Although the plaintiff relied on section 323 of the Restatement, the court found section 324A to be more relevant to the facts. 636 N.W.2d at 82. The Supreme Court, however, held that section 324A did not permit the claims to go forward. The court held:

> [A]lthough an assumed duty recognized by section 323 may also run in favor of a third person, <u>see</u> Restatement (Second) of Torts § 324A, under that section a party who undertakes to perform a service to another which is essential for the protection of a third person is only liable to the third person for *physical* harm. Restatement (Second) of Torts § 324A. Even if Covenant should have recognized the need to protect Thiesen, Thiesen did not suffer any physical harm. Thus, none of the Restatement sections on which Thiesen relies establish a duty on Covenant's part to conduct a reasonable investigation in his favor.

636 N.W.2d at 82-83 (emphasis by court). The Supreme Court, therefore, upheld the lower court's dismissal of the negligent inspection claim. 636 N.W.2d at 83.

In the absence of any physical harm, plaintiffs' claims based upon section 324A of the Restatement are not cognizable under Iowa law, and there is no other duty that would allow these

negligence claims to proceed.[7] All tort claims should, therefore, be dismissed.

### III.  PLAINTIFFS' CLAIM THAT THE SBA NEGLIGENTLY FAILED TO PERFORM A FIELD VISIT IS FACTUALLY UNTENABLE.

In the appeal in the instant case, the Eighth Circuit held that the discretionary function exemption of the FTCA, 28 U.S.C. § 2680(a), did not retain defendants' sovereign immunity for several liquidation-related actions mandated by the SBA's Standard Operating Procedure 50-51 governing liquidation actions ("Liquidation SOP"). (Excerpts attached to Defendants' Original Motion as Att. 1 to Defs. Ex. 2.) This included the requirement that a field visit be performed in connection with the SBA's determination to approve liquidation. 255 F.3d at 517-19.

The Eighth Circuit clarified its decision as follows:

> To the extent Audio Odyssey is alleging that the SBA was negligent for a complete failure to undertake certain mandatory procedures, the discretionary function exemption does not apply and the district court has jurisdiction to address these claims. The SBA is protected by the discretionary function exemption, however, to the extent Audio Odyssey alleges the SBA was negligent in the way that it executed these mandatory procedures.

255 F.3d at 519.

The Liquidation SOP authorizes the performance of a field visit by a "lender and/or SBA representative." SOP 50-51-1 ¶ 44c, (Att. 1 to Defs. Ex. 2). The SOP requires only the following procedures for a field visit:

1. The field visit must occur "within ten working days following knowledge of condition(s) which create an 'in liquidation' situation, or if not made within ten working days; "justification for not doing so and the establishment of a new deadline shall be documented in an SBA 327";

---

[7] In its Summary Judgment Order (p.14), this Court relied upon the Iowa Supreme Court's adoption of Restatement Section 324A in Thompson v. Bohlken, 312 N.W.2d 501, 507 (Iowa 1981). Thompson, however, is inapposite since that case involved physical injury, i.e., the loss of several fingers. 312 N.W.2d at 503.

2. the person performing the inspection "will make a preliminary review of security instruments and document the amount and condition of collateral";

3. "[i]f the borrower is still operating the situation is discussed with the participant's representative and the borrower, and the potential for workout/restructuring is assessed"; and

4. "[i]f the borrower has ceased operations or if collection enforcement is deemed necessary, plans for proceeding with liquidation will be discussed between SBA and the participant."

SOP 50-51-1 ¶ 44c, App. A214.[8] The SOP does not mandate that these actions occur in any particular order

These requirements were met in the instant case. Brenton Bank went to Audio's premises to review and take possession of the collateral within two days of its conversation with the SBA on July 12th; prior to that visit the situation was discussed with the borrower and the potential for a workout assessed, and there were discussions between SBA and the participant because collection enforcement was deemed necessary if the workout negotiations failed. Fact Statement ¶¶ 9-11, 17. Plaintiffs' claim that the SBA negligently failed to undertake or have the bank undertake a field visit is, therefore, invalid. "To the extent Audio Odyssey alleges the SBA was negligent in the way that it executed [this] mandatory procedure[]", such as any claim that the SBA was negligent in allowing the bank to perform the field visit or in the manner or timing in which the field visit was conducted, "[t]he SBA is protected by the discretionary function exemption". Audio Odyssey, 255 F.3d at 519.

## IV.    THE NEGLIGENCE CLAIM BASED UPON THE ALLEGED ABSENCE OF A LIQUIDATION PLAN IS INVALID.

The Eighth Circuit held that the discretionary function did not apply to the plaintiffs'

---

[8] Paragraph 44c also states that "in all cases the liquidation officer will view the collateral prior to preparation of the SBA 327 establishing the amount of any protective bid (or a no-bid position)" but this requirement only applies "in the event of a foreclosure sale."

claim that the SBA negligently failed to prepare, or have the bank prepare, a liquidation plan because the plan was required by the Liquidation SOP. 255 F.3d at 517-18. Plaintiffs' negligence claim based upon the alleged absence of a liquidation plan is, nonetheless, without merit.

Assuming, arguendo, that plaintiffs could assert claims based upon the SBA's alleged breach of the duty under Restatement section 324A despite the absence of physical injury, section 324A only imposes a duty if the defendant undertook "to render services ... for the protection of" the plaintiff. Plaintiffs cannot make this showing with respect to their claim that the SBA negligently failed to prepare a liquidation plan because the plan is intended only for the SBA's protection, not the borrower's. Plaintiffs' claim is also untenable because it necessarily rests on the contention that the SBA would not have authorized liquidation after a plan was prepared. The SBA's already-established discretion in approving liquidation, however, bars this claim.

### A. The Liquidation Plan Is Not A Service Rendered To Protect Borrowers And Cannot Support A Claim Based Upon A Breach of the Duty In Section 324A.

In its Summary Judgment Order (p.10), this Court's holding that SBA was subject to a duty under section 324A of the Restatement was based upon the liquidation policy of the SBA, as set forth in SBA regulations (13 C.F.R. § 120.204-1(a) (1995)), "to aid, counsel, assist and protect small concerns to which loans have been made" and that "[o]rdinarily, the liquidation of the property securing a loan will not be resorted to if there appears to be any reasonable prospect that the loan may be repaid by the borrower or a guarantor" Def. Ex. 1 (emphasis added) (this language was deleted from this regulation in 1996. See 13 C.F.R. § 120.540(a) (2002)). The regulation only establishes the SBA as a "protector" of small businesses with respect to the Agency's decision to "resort[] to" liquidation, not the separate action of preparing a liquidation plan. The SOP makes clear that a plan is to be prepared only after the decision to initiate

liquidation, and is intended to maximize recovery through liquidation, not to protect borrowers.

Plaintiffs contend that a liquidation plan must be prepared before the SBA renders a decision to proceed with liquidation, analogizing the plan to a sort of pre-liquidation inspection. In their Resistance they state on page 32 as follows:

> SBA's SOP requir[es] certain careful steps to be taken prior to liquidation or allowing a liquidation by a lender. The steps must be taken to ensure that there is no hope for a workout, and all the essential facts have been analyzed prior to a liquidation. .... An action against the SBA that they reviewed a liquidation plan negligently or underestimated prior security interests might well be barred as discretionary. But to not even take the action at all is exactly like the inspector's failure to inspect at all. Instead, here, there was an oral statement that the SBA liquidator "I agreed," based on certain inconsistent, contradictory and unverified statements from the Bank. Had the essential facts been analyzed and discussed further with the borrower, questions of insurance, sale and a personal funds workout would have been explored.

See also Plaintiffs' Resistance at 43 (liquidation plan "is comprehensive because of the process to determine whether liquidation is appropriate requires a certain procedure and analysis" and the preparation of the plan "would have clearly demonstrated the folly of the proceeding").

This assertion is incorrect. Paragraph 4 of the Liquidation SOP sets forth factors to be considered before "a loan will be transferred to the 'In Liquidation' classification", i.e., a decision is made to resort to liquidation. Att. 1 to Defs. Ex. 2 (page 19). Paragraph 4b states:

> Before making a recommendation to liquidate a loan account, other than those in an 'automatic' situation [as set forth in paragraph 4a], the liquidation officer must determine if it is no longer reasonable to assume that the borrower can succeed, that workout efforts have been (or will be) unsuccessful, and that the borrower cannot (or will not) repay the loan.

Thus, considerations of whether a workout is feasible are to take place prior to placing a loan into liquidation. Paragraph 19 of the Liquidation SOP provides that "[u]pon the classification of a loan as in liquidation, a liquidation plan must be developed ...." Att. 1. to Defs. Ex. 2, at 36. The preparation of a liquidation plan is not a prerequisite to the decision whether to [resort[]" to

- 14 -

liquidation under section 120.204-1(a). Instead, the plan is a separate action required only after the SBA has made the determination to put the loan into liquidation.[9]

Moreover, paragraph 19 of the SOP makes clear that the purpose of the liquidation plan is to maximize recovery of the debt, and, thus, is intended solely to protect the SBA. Paragraph 19 states: "[t]he liquidation plan ... involves assembling and recording key data so that decisions can be made at the outset as to the Action Plan most likely to produce the greatest net recovery in the least amount of time." Id. (emphasis added). This theme is repeated in several provisions:

(1) "The liquidation plan consists of several parts, starting with a review of factual data to determine the present situation, and leading to a realistic and effective action plan for timely resolution of the debt." Par. 19a (emphasis added).

(2) "At the outset of liquidation, the liquidation officer should promptly locate, identify, determine the condition of, and, if applicable, appraise all collateral. Failure to do so could result in displacement of the property or unwarranted loss in value, resulting in reduced recovery to the Agency." Par. 19a(6) (emphasis added).

(3) "Based on an analysis of the facts, prepare a reasonable course of action which will likely yield the greatest overall net recovery in the least amount of time." Par. 19a(8) (emphasis added).

Paragraph 19 contains no language even remotely suggesting that the purpose of the liquidation plan is to "aid, counsel, assist [or] protect" the borrower. Nor is there any hint that the SBA must, as part of a liquidation plan, determine whether a workout with the borrower is possible. As noted above, this analysis occurs before a loan is placed into liquidation.

The language in paragraph 19 clearly showing that the purpose of the liquidation plan is to protect the SBA's financial interest stands in stark contrast to the language in 13 C.F.R. § 120.204-1(a) that the separate decision whether to resort to liquidation should be consistent

---

[9] Paragraph 19 provides that the liquidation plan "may or may not be included in the SBA 327 placing the loan into liquidation ...."

with the SBA's policy of aiding, counseling, assisting and protecting borrowers, which the Court

found supported a duty under section 324A. Once that liquidation decision is made, paragraph 19

of the Liquidation SOP provides that the preparation of a liquidation plan is not a service

rendered to protect the borrower, but an effort to organize the liquidation process to enhance

efficient and maximized recovery on the debt. Plaintiffs' claim that the SBA owed a duty to them

under section 324A regarding the preparation of a liquidation plan must, therefore, be rejected.[10]

### B. The SBA's Recognized Discretion Whether To Permit Liquidation Precludes The Claims That The SBA Negligently Failed to Prepare a Liquidation Plan.

Even if a duty did arise under section 324A regarding the preparation of a liquidation

plan, arguendo, plaintiffs' negligence claim based upon the alleged failure to prepare a liquidation

plan also lacks merit because plaintiffs cannot prevail on this claim unless they can prove that

SBA would not, and could not, have decided to authorize the liquidation if a plan had been

prepared. It has already been established that this decision is a protected discretionary function.

Plaintiffs' theory of their negligence claim regarding the preparation of a liquidation plan

is revealed in the following excerpts from their Resistance: "if the SBA-required written

liquidation plan from the Bank had been prepared which would have clarified the stupidity of

'taking possession,' the liquidation and damages would not have occurred" and "[h]ad the

mandatory provisions been adhered to, the actions of the Bank could not have gone forward and

---

[10] Further, as the clearly stated purpose of the plan is to protect SBA, plaintiffs cannot show that they reasonably relied on an undertaking that the Agency would prepare a plan to protect them, as required by section 324A(c) of the Restatement. There is also no basis for a finding that a duty arose under section 324A(a) of the Restatement, which provides a duty if the "failure to exercise reasonable care increases the risk" of harm because there are no facts to show that the SBA's actions increased any risk of harm to the plaintiffs. See Thompson, 312 N.W.2d at 507-08 (no liability under section 324A(a) if defendant did not increase the risk of harm).

the harm would have been prevented." (Resistance at 46) The essence of this claims is as follows: (1) a liquidation plan was required; (2) had a liquidation plan been prepared, the SBA would have been aware of the "essential facts"; (3) had the SBA been aware of these facts it would have realized that liquidation was pointless; (4) the SBA would, therefore, never have authorized the bank's liquidation; and (5) there would have been no injury to the business.

As noted above, plaintiffs' negligence claim regarding the preparation of the liquidation plan rest on the erroneous conclusion that the plan was required prior to the decision to place a loan into liquidation. But, even if the plan was required prior to a liquidation decision, this negligence claim is absolutely dependent upon a finding that the SBA would not, and could not, have authorized the liquidation if a liquidation plan had been prepared. This dependency is fatal to that claim. For, as this Court and the Eighth Circuit have already held, "the decision to place a loan in liquidation is discretionary", Audio Odyssey, 255 F.3d at 517, and, therefore, protected by the discretionary function exemption in 28 U.S.C. § 2680(a). The SBA cannot be liable for a decision to authorize liquidation, and plaintiffs' claims regarding the liquidation plan cannot succeed without a finding that the SBA wrongfully authorized the liquidation. Thus, the Court should dismiss this claim or enter summary judgment for defendants.

## V.    PLAINTIFFS' CLAIM THAT THE SBA FAILED TO ADVISE THE BANK THAT IT WAS TO TAKE NO ACTION WITHOUT SBA'S CONSENT LACKS MERIT.

The appellate court found that the discretionary function exemption of the FTCA did not bar the plaintiffs' claim that the SBA negligently "failed to inform the Bank that it was to take no action, including making demand on the borrower, or file suit without written approval." 255 F.3d at 517. This claim is apparently based on language in paragraph 44a of the Liquidation SOP. See Complaint ¶ 17; Resistance at p. 5.

This claim lacks merit on its face. Paragraph 44a provides that the SBA is only to convey this information to the Bank upon receipt of a liquidation plan. Paragraph 44a provides:

> In some rare situations, the first notice SBA receives from the lender may be the lender's proposed liquidation plan. <u>In such case</u>, the liquidation officer or line supervisor <u>will telephone</u> the lender within 24 hours following receipt of the plan to ascertain the essential facts in the matter. <u>During the conversation</u>, the SBA spokesperson will arrange for the required field visit and advise the lender that no action, including making demand on the borrower, is to be taken without SBA's written consent.

SOP ¶ 44a, page 68 (Att. 1 to Defs. Ex. 2) (emphasis added). Thus, the requirement to "advise the lender that no action ... is to be taken without SBA's written consent" is only required if the first notice the SBA receives of proposed liquidation is a lender's liquidation plan, during the telephone conversation that must follow receipt of this plan. According to plaintiffs' allegations, however, no liquidation plan was ever developed or submitted to the SBA. Complaint ¶ 20.

This negligence claim lacks merit and should be dismissed or summary judgment should issue for the SBA.

## VI.  PLAINTIFFS' THIRD-PARTY CONTRACT CLAIM IS FACIALLY WITHOUT MERIT AND IS BARRED BY THE BANK'S WAIVER OF THIS CLAIM.

The Eighth Circuit held that plaintiffs' contract claim against the SBA (Count II) must be reviewed under federal common law, and that under such law, plaintiffs are third-party beneficiaries of the Guaranty Agreement between Brenton Bank and the SBA (Attached as Ex. 1 to the Complaint). <u>Audio Odyssey</u>, 255 F.3d at 520. Plaintiffs assert breach of contract claims based upon SBA's failure to give written consent to the bank to bring suit or make a demand upon the Note. It is undisputed that SBA verbally consented to these actions. This claim is barred because the contractual provision at issue imposed no duty upon SBA. Further, because plaintiffs are subject to any defenses that SBA could assert against the bank, any claim for breach of the

contract has been waived by the bank's acceptance of the verbal consent. Defendants, thus, move

the Court to dismiss the contract claim or to enter summary judgment for defendants.

### A. **Plaintiffs Cannot Enforce A Contract Provision That Does Not Impose A Duty Upon the SBA.**

Plaintiffs claim that the SBA breached the Guaranty Agreement, in the following ways:

A. By authorizing a lawsuit upon a loan instrument in violation of the provision of the Loan Guaranty Agreement which provides that neither Brenton Bank nor the SBA shall, without the prior written consent of the other ... sue upon any loan instrument; and

B. Failed to give Brenton Bank written consent to make a demand or sue upon a loan instrument as required by the Loan Guaranty Agreement.

Count II, Complaint ¶ 52. (It is not entirely clear how claim A differs from claim B.) As this

Court found in its Summary Judgment Order (pp. 3-4), the undisputed facts showed that although

the SBA did not consent to Brenton Bank's proposed actions in writing, it did consent to the

bank's proposed liquidation actions in a telephone conversation that took place on July 12.

The relevant paragraph of the Guaranty Agreement states, in pertinent part, as follows:

6. Administration of Loans. Lender shall hold the Loan Instruments, and shall receive all payments of principal and interest until transfer of the note to SBA. Holder of the note (Lender or SBA) shall not, without the written consent of the other (a) make or consent to any substantial alteration in the terms of any Loan Instrument ...; (b) make or consent to any releases of collateral having a cumulative value, as reasonably determined by the holder of the note, which is more than 20 percent of the original loan amount; (c) accelerate the maturity of the note; (d) sue upon any Loan Instrument; or (e) waive any claim against any borrower, guarantor, obligor or standby creditor arising out of any Loan Instrument. ....

Exhibit 1 to Complaint (emphasis added).

Paragraph 6 only imposed a duty on the "Holder" of the note. SBA, however, was not the

Holder of the Note in July of 1995 when Brenton Bank undertook the relevant liquidation

actions. Under paragraph 7 of the 1978 Guaranty Agreement, Brenton Bank was to transfer the

Loan Instruments to SBA only at the time that SBA purchased its guaranteed share of the loan. Exhibit 1 to Complaint. See also 13 C.F.R. 120.200-2 (1995) (Lender "shall hold the note" until "SBA's purchase of its guaranteed share of the loan" at which time "Lender shall thereupon assign the note and other loan instruments to SBA ....") (copy attached as Def. Ex. 1 to Original Motion). The SBA did not purchase its guaranteed share until October 30, 1995, well after the alleged liquidation actions at issue in this suit. Fact Statement ¶ 19.

Paragraph 6 of the Agreement only imposed a duty upon the Holder of the Note (Brenton Bank) -- the duty to obtain the prior written consent of the Non Holder (the SBA) before taking certain actions -- and gave a right to the Non-Holder to grant or deny a request for such consent. Plaintiffs' claim that SBA breached a duty to give written consent rests upon a clear misreading of paragraph 6. Plaintiffs "confuse[] the concept of a right with the concept of a duty'" whereas "[a] duty is an obligation to do a thing; a right is a power or privilege to do a thing." Werner Enter., Inc. v. MNX Carriers, Inc., 163 F.3d 490, 491 (8th Cir. 1998) (as unambiguous terms of lease did not "include a duty to demand identification", but only "the 'right' to make such demands", district court properly dismissed contract claim that the defendant breached a duty to require proper identification).

Thus, this Court should dismiss Count II as failing to state a claim for which relief can be granted under Rule 12(b)(6) or enter summary judgment.[11]

---

[11] As in Werner, the Eighth Circuit also recognized that contract claims that fail to allege a breach of a discernable duty should be dismissed under Rule 12 in Parkhill v. Minnesota Mutual Life Ins. Co., 286 F.3d 1051 (8th Cir. 2002). Accord Opinion of Judge Pratt in Mattes v. ABC Plastics, Inc., No. 3-01-CV-90064 (Oct. 22, 2001), attached as Defs. Supp. Ex. 1.

## B. **Plaintiffs' Contract Claim Is Invalid Because It Was Waived By The Bank**.

Under federal common law, it is well established that a "third party beneficiary that brings a contract claim steps into the shoes of the promisee and is therefore subject to any claim or defense that the promisor would have against the promisee". Bituminous Coal Operators' Ass'n, Inc. v. Connors, 867 F.2d 625, 632 (D.C. Cir. 1989).[12] To the extent that paragraph 6 of the Guaranty Agreement did impose a duty upon the SBA, arguendo, plaintiffs' claim is barred because Brenton Bank, the promisee in this case, clearly waived any right to bring suit regarding SBA's failure provide written consent to the bank's liquidation actions.

"'[T]he well-known rule regarding waiver of contractual requirements [is that a] party to a contract may by express agreement or by his own course of conduct waive his legal right to insist on strict performance of the covenants of the contract ....'" 13 Williston on Contracts § 39:27 at 621 (R. Lord 4th ed. 2000) (hereinafter "Williston") (quoting Graubremse GMBH v. Berg Mfg. & Sales Co., 417 F.2d 1201, 1204 (7th Cir. 1969) (brackets in Williston; quotations in Graubremse GMBH omitted). Accord Gutor Int'l, AG v. Raymond Packer Co., 493 F.2d 938, 944 (1st Cir. 1974) ("waiver [of contractual right] may be inferred by the conduct of the parties")

---

[12] Schneider Moving & Storage Co. v. Robbins, 466 U.S. 364, 370 (1983) ("general rule [is] that the promisor may assert against the beneficiary any defense that he could assert against the promisee if the promisee were suing on the contract" unless the contract establishes parties' intent that beneficiary is not to be affected by the promisor's defenses against the promisee) (citing Restatement (Second) of Contracts § 309, Comment b (1981)); S. Williston, Contracts § 395 (3d ed. 1959); and 4 A. Corbin, Contracts § 819 (1951)); First Hartford Corp. Pension Plan & Trust v. United States, 194 F.3d 1279, 1289 (Fed. Cir. 1999) ("the party standing outside of privity by contractual obligation stands in the shoes of a party within privity"); Benson v. Brower's Moving & Storage, Inc., 907 F.2d 310, 313 (2d Cir.) ("Third party beneficiaries generally are subject to defenses that the promisor could raise in a suit by the promisee. That is, they step into the shoes of the promisee.") (citing J. Calamari & J. Perillo, The Law of Contracts § 17-8, at 623-24 (2d ed. 1977)), cert. denied, 498 U.S. 982 (1990).

(citing A. Corbin, Contracts § 870 at 476, § 873 at 496 (1951)). An implied in fact waiver of a contractual right may arise "if the actions or conduct of the person against whom the waiver is asserted are inconsistent with anything other than an intention to waive the right." Williston § 39:28 at 626-27. Accord BMC Indus., Inc. v. Barth Indus., Inc., 160 F.3d 1322, 1333 (11th Cir. 1998) ("[c]onduct may constitute waiver of implied term" when clearly demonstrated such as "when a party's actions are inconsistent with continued retention of the right."); National Liberty Corp. v. Wal-Mart Stores, Inc., 120 F.3d 913, 915 (8th Cir. 1997) (implied waiver of contractual right occurs when party's conduct is "so manifestly consistent with and indicative of an intention to renounce a particular right or benefit that no other reasonable explanation of [the] conduct is possible") (quotations omitted; brackets in National Liberty Corp.).

This principle was applied in National Liberty Corp., where the Eighth Circuit found that the plaintiff's conduct had impliedly waived a contractual right to written consent. The evidence consisted essentially of notice to National Liberty of the third party's assumption of the contractual duties, National Liberty's acknowledgement of this notice, and National Liberty's submission of commission checks to the third party for work done. 120 F.3d at 915-16. The court held that "[b]y its own actions, National Liberty exhibited its clear and unequivocal intention to accept [the] assignment and thereby waived its right under the agreement to require written consent to the assignment". 120 F.3d at 916. Accord Gutor Int'l, AG, 493 F.2d at 944 ("Packer's uncomplaining acceptance of Gutor in place of Direma, the relationship that evolved with Gutor in 1965 and thereafter, and the wording of certain letters lends support to Packer's contentions of assignment of the Agreement and waiver of the 'written consent' requirement").

The facts of this case warrant a similar finding that Brenton Bank waived any written consent requirement. On July 12, 1995, a Brenton Bank official phoned the SBA advising of

- 22 -

Audio's failure to make two monthly loan payments. (Fact Statement ¶ 9.) The bank official

requested the SBA's approval to provide the borrowers with an opportunity to cure this default,

but that if a cure did not occur, to undertake liquidation, and the SBA verbally agreed with this

proposal. (Fact Statement pars. 10, 11). Brenton Bank did not insist that the SBA put this consent

into writing. Instead, by letter dated July 13, 1995, a bank attorney wrote a letter to Audio,

demanding that Audio pay the outstanding balance on the loan, and filed a replevin action in state

court. (Fact Statement pars. 13, 16). Brenton Bank then sought and obtained payment of the SBA

guaranty on the Audio loan in October of 1995. (Fact Statement par. 19.)

Brenton Bank's notice of the verbal consent, continued efforts to undertake the

liquidation actions based on the SBA's verbal approval, without objection, and its continued

retention of the benefits of the agreement, in the form of receiving the guaranty payment from the

SBA clearly demonstrate conduct "inconsistent with anything other than an intention to waive"

the written consent requirement. As plaintiffs "step into the shoes" of Brenton Bank in attempting

to enforce the contract as a third-party beneficiary, their contract claims are barred by the bank's

waiver of the written consent requirement.

## VII.   SUMMARY JUDGMENT IS APPROPRIATE BECAUSE THE SBA WAS NOT THE ACTUAL OR PROXIMATE CAUSE OF ANY INJURY TO PLAINTIFFS.

The Eighth Circuit has held that "[t]he elements of a negligence claim under Iowa law

are:  the existence of a duty to conform to a standard of conduct to protect others; failure to

conform to that standard; proximate cause; and damages." Gremmels v. Tandy Corp., 120 F.3d

103, 105 (8th Cir. 1997) (citing, inter alia, Hartig v. Francois, 562 N.W.2d 427, 429 (Iowa 1997);

and W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 30 (5th ed. 1984)). As the

Gremmels court further explained:

> Causation "has two components: (1) the defendant's conduct must have in fact
> caused the plaintiff's damages (generally a factual inquiry) [causation in fact] and
> (2) the policy of the law must require the defendant to be legally responsible for the
> injury (generally a legal question) [proximate or legal causation]." Scoggins v. Wal-
> Mart Stores, Inc., 560 N.W.2d 564, 567 (Iowa 1997) (Scoggins) (citing Gerst v.
> Marshall, 549 N.W.2d 810, 815-16 (Iowa 1996)). Proximate or legal cause involves
> a policy decision as to whether the defendant should be held legally responsible for
> the consequences that the defendant's actions have "in fact" caused. Id. "[A]n actor's
> conduct is a proximate or legal cause of harm to another if the conduct is a
> 'substantial factor' in producing the harm...." Waitek v. Dalkon Shield Claimants
> Trust, 908 F. Supp. 672, 683 (N.D. Iowa 1995) (citing Kelly v. Sinclair Oil Co., 476
> N.W.2d 341, 349 (Iowa 1991)) "[I]n determining whether conduct meets the
> substantial factor test, we look to the 'proximity and foreseeability of the harm
> flowing from the actor's conduct, although it is not necessary that the actual
> consequences of a defendant's negligence should have been foreseen.'" Scoggins,
> 560 N.W.2d at 567 (citations omitted).

120 F.3d at 106 (brackets and parentheses in Gremmels). In Gremmels, the Eighth Circuit found

that undisputed facts showed that the defendant, a retail store, was not responsible for, and could

not have known about, a defective weld in a chair, which collapsed, causing injury to the

plaintiff. Id. at 106. Thus, the court affirmed summary judgment for the store, finding that

defendant's actions were neither the cause in fact nor proximate cause of the plaintiff's injury. Id.

Similarly, it is well settled that the plaintiff in a breach of contract action must show that

the breach was the cause of the alleged damages. See, e.g., Inacom Corp. v. Sears, Roebuck and

Co., 254 F.3d 683, 689 (8th Cir. 2001).

In the instant case, only the following claims remain in this case: (1) the SBA negligently

failed to inform the Bank that it was to take no action, including making a demand or file suit

without SBA's written approval (Count I); (2) the SBA negligently and in breach of its contractual

duty failed to give written consent for the bank to sue (Counts I and II); (3) the SBA negligently

failed to conduct, or have the bank conduct, a field visit (Count I); and (4) the SBA negligently

failed to prepare, or have the bank prepare, a liquidation plan (Count I). 255 F.3d at 517-19.

In defendants' Fact Statement, filed in support of their Original Motion, defendants asserted that none of these alleged failures caused any damage or injury to plaintiffs. Fact Statement ¶ 20. Plaintiffs only attempt to show a genuine dispute of these material facts was contained in paragraph 57 of their Statement of Material Facts. In the Summary Judgment Order (p. 7), this Court granted the SBA's motion to strike paragraph 57 (as well as other paragraphs) because plaintiffs only asserted legal arguments, not facts. Consequently, there is no genuinely disputed material fact to block summary judgment for the SBA.[13]

In addition, the SBA's alleged failure to prepare, or have the bank prepare a liquidation plan was not the proximate cause of any injury to plaintiffs. As discussed in section IV, plaintiffs cannot prevail on their negligence claim regarding the alleged failure to prepare a liquidation plan unless they can show that the SBA would not have authorized the liquidation had a liquidation plan been prepared. Inasmuch as plaintiffs must be able to demonstrate that the alleged absence of a liquidation plan was the proximate cause of any injury to prevail on this claim, the SBA's complete discretion in determining whether to authorize liquidation compels the conclusion that plaintiffs cannot, as a matter of law, show that the alleged failure to prepare, or have the bank prepare, a liquidation plan was the proximate cause of any injury to plaintiffs.

In addition, the Bank's actions constituted a superseding force to any negligence by SBA.

---

[13] Similarly, in paragraph 12 the Fact Statement, defendants asserted that the absence of written, rather than verbal, consent to the bank's liquidation actions did not cause any injury to the plaintiffs. In opposing the assertion, plaintiffs failed to adduce any genuinely disputed material fact. See Plaintiffs' Statement of Material Facts, Section VI (entitled "Specific Denials of Defendants' Factual Allegations), par. 49 (merely citing to SBA's SOP). Plaintiffs' failure to show that the alleged injury would have been averted if SBA's consent to the Bank had been in writing, rather than oral, compels the entry of summary judgment on Count II, and Count I as to the claim that the SBA negligently failed to give written consent to the liquidation actions.

"When conduct or forces occur after an actor's conduct, ... the actor may be relieved of liability if a court finds that the later-occurring event is such as to break the chain of causal events between the actor's negligence and the plaintiff's injury. This is so even when the actor's conduct is a cause-in-fact of the plaintiff's harm." Kelly, 476 N.W.2d at 349-50.[14] In Kelly, the Supreme Court of Iowa reversed the lower court's denial of a defendant's motion for summary judgment, finding that that defendant's "conduct was not a 'substantial factor' giving rise to [the] injuries" and that the acts of other parties "'superseding' events" precluded the defendant from being liable. 476 N.W.2d at 350-51.

In the instant case, Brenton Bank, not SBA, allegedly failed to credit the plaintiffs' overdue June and July loan payments before obtaining or executing upon the writ or replevin. In addition, as the Eighth Circuit found, the Sheriff's deputies exceeded the authority of the replevin order which pertained only to personal property, by seizing Audio's real property in addition to the personal property. 245 F.3d at 737-38. It has already been established that the SBA was unaware either of the Bank's failure to credit the loan payments, Summary Judgment Order p. 4, or the wrongful seizure of the real property, 245 F.3d at 741. The SBA respectfully submits that none of the allegedly wrongful actions by the SBA could conceivably have been either the actual cause of plaintiffs' alleged damages, or a substantial factor leading to the claimed injuries, as needed to be the proximate cause, and that, in any event, the acts or omissions of the Bank and the Sheriff's deputies constituted superseding forces relieving the SBA of any liability.

---

[14] (citing Brichacek v. Hiskey, 401 N.W.2d 44, 48 (Iowa 1987); Smith v. Shaffer, 395 N.W.2d 853, 857 (Iowa 1986); Iowa Elec. Light and Power Co. v. General Elec. Co., 352 N.W.2d 231, 235 (Iowa 1984); Schnebly v. Baker, 217 N.W.2d 708, 729 (Iowa 1974); Restatement (Second) of Torts §§ 440-43, 447-49 (1965)).

## VIII. THE COURT SHOULD STRIKE THE JURY DEMAND IF IT DOES NOT DISMISS OR ENTER JUDGMENT FOR THE SBA ON ALL CLAIMS.

It is a "general principle that the United States, as sovereign, is immune from suit save as it consents to be sued and the terms of its consent to be sued in any court define the court's jurisdiction to entertain the suit." Lehman v. Nakshian, 453 U.S. 156, 159 (1981) (quotations and ellipsis omitted); accord United States v. Testan, 424 U.S. 392, 399 (1976); United States v. Sherwood, 312 U.S. 584, 586 (1941). The "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." Lehman, 453 U.S. at 160 (quoting Soriano v. United States, 352 U.S. 270, 276 (1957)). This includes a claim for a jury trial, for "[w]hen Congress has waived the sovereign immunity of the United States, it has almost always conditioned that waiver upon a plaintiff's relinquishing any claim to a jury trial." Id. The Court ruled that an exception to this general rule is only permissible if "Congress clearly and unequivocally departed from its usual practice in this area, and granted a right to trial by jury" in the specific statute which authorizes the plaintiff's cause of action. Id. at 162 (jury trial unavailable for certain age discrimination claims against government); see also Crawford v. Runyon, 79 F.3d 743, 744 (8th Cir. 1996) (no right to jury trial against federal agency without specific waiver of immunity).

Accordingly, to the extent the Court does not dismiss or enter judgment for the SBA on all claims asserted, it should strike the jury demand due to the absence or a waiver of immunity.

## CONCLUSION

For the foregoing reasons, defendants respectfully move to dismiss this case with prejudice due to the lack of jurisdiction or due to plaintiffs' failure to state a claim upon which relief can be granted, or, alternatively, enter summary judgment in the SBA's favor on all claims

or on those claims deemed invalid.  To the extent that the Court does not dismiss or enter

judgment on all claims, defendants further request the Court to strike the jury demand.

Respectfully submitted,

Steven M. Colloton
United States Attorney

By: _____ (with permission)
GARY L. HAYWARD, Assistant U.S. Attorney
2nd Floor, Courthouse Annex
110 E. Court Avenue
Des Moines, Iowa  50309-2043
(515) 284-6474

By: _____
GLENN P. HARRIS
Chief Counsel for Enforcement
Office of General Counsel
U.S. Small Business Administration
409 Third St., SW, 7th Floor
Washington, DC  20416
(202) 205-6862

Attorneys for Defendants

**DEFENDANTS' SUPPLEMENTAL EXHIBIT 1**

<u>Audio Odyssey, Ltd. v. United States,</u>
No. 3-99-CV-10161

Sent by: JetFax M910e                    515 284 6333;      02/01/02 16:52;   JetFax #913;Page 2
12:32 OCT 22, 2001                        tFax M910e; Page 2
                                          TEL NO: 515284622
                                                                              #21801  PAGE: 2/1

FILED 10/22/2001 11:23:06 AM, USDC, Southern District of Iowa

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
### DAVENPORT DIVISION

| | |
|---|---|
| EDWARD J. MATTES, CATHERINE M. MATTES, and NANCY J. WATERS, | 3-01-CV-90064 |
| Plaintiffs, | |
| v. | |
| ABC PLASTICS, INC. and ERNEST W. STOPPELMOOR, | |
| Defendants and Third-party Plaintiffs, | |
| v. | |
| SMALL BUSINESS ADMINISTRATION (SBA) and LPP MORTGAGE AS ASSIGNEE OF SBA | MEMORANDUM OPINION AND ORDER |
| Third-party Defendants | |

Plaintiffs brought this action in Iowa District Court for Johnson County against the Defendants seeking payment on a real estate lease. The Defendants impleaded the Third-party Defendants, the Small Business Administration ("SBA") and LPP Mortgage. The SBA then removed to federal court pursuant to 28 U.S.C. § 1446(a). The SBA now moves to dismiss the third-party claims against them pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, lack of subject matter jurisdiction, and Rule 12(b)(6), failure to state a claim on which relief can be granted. For the reasons discussed below, the Court grants the SBA's motion, dismisses the Defendants third-party counterclaim against the SBA with prejudice, and remands the case back to the Iowa District Court for Johnston County.

Sent by: JetFax M910e                515 284 6333;           02/01/02 16:53;  JetFax #913;Page 3/12
Received: 10/22/01 11:46;        ->tFax M910e;  Page 3
12:32 OCT 22, 2001                                TEL NO: 515284622            #21801  PAGE: 3/12

## I. Facts

The SBA is authorized, pursuant to section 7(a) of the Small Business Act, 15 U.S.C. §
636(a), to issue guarantees on loans made by banks and other small businesses. Under 15 U.S.C.
§ 634(b)(1), the SBA is authorized to "sue or be sued" in federal district courts.

In 1997, Ernest W. Stoppelmoor, doing business as ABC Plastics ("ABC"), took over a
business that went into default on its SBA guaranteed bank loan. In doing so, Mr. Stoppelmoor
took out a loan of his own, guaranteed by the SBA, and entered into a lease with the Plaintiffs,
Edward Mattes, Catherine Mattes, and Nancy Walters. According to Mr. Stoppelmoor's most
recent amended complaint, "[l]arge amounts of unusable or contaminated plastic materials
existed on the premises when Defendant's lease started," previously unbeknownst to Mr.
Stoppelmoor. "When the lease expired, Defendant was forced by SBA to forfeit his business
equipment to the company which conducted the clean-up of the contaminated materials." Mr.
Stoppelmoor also failed to pay rent to the Plaintiffs, who sued him in Iowa District Court for
Johnson County. Mr. Stoppelmoor impleaded the SBA and LPP Mortgage, Inc. and the SBA
subsequently removed to this Court. Since then, Mr. Stoppelmoor has amended his
counterclaims against LPP Mortgage, Inc. and the SBA, and sought to amend them a second time
on October 11, 2001, the day the Court heard the SBA's motion to dismiss these counterclaims.

## II. Motion to Dismiss Standard

In addressing a motion to dismiss under Rule 12(b)(6), this Court "is constrained by a stringent
standard . . . . A complaint should not be dismissed for failure to state a claim unless it appears
beyond doubt that the plaintiff can prove *no* set of facts in support of his claim which would

Sent by: JetFax M910e    515 284 6333;    02/01/02 16:53;    JetFax #913;Page 4/12
Received: 10/22/01 11:46;    -> Fax M910e; Page 4
12:33 OCT 22, 2001    TEL NO: 515284622    #21801  PAGE: 4/12

entitle him to relief." *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 545-46 (8th Cir. 1997) (quoting *Fusco v. Xerox Corp.*, 676 F.2d 332, 334 (8th Cir. 1982) (citation omitted) (emphasis added)).

In addition, the complaint must be liberally construed in the light most favorable to the plaintiff and should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations. *See Parnes*, 122 F.3d at 546. Finally, when considering a motion to dismiss for failure to state a claim, a court must accept the facts alleged in the complaint as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). The Supreme Court has articulated the test as follows:

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a claimant will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader.

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183, 191 (1984). A motion to dismiss should be granted "only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995).

### III. Discussion

#### A.    Action in Contract

The gravamen of Mr. Stoppelmoor's latest complaint is that the SBA entered into and breached a contract with Mr. Stoppelmoor, for which the business losses arising out of ABC's

Sent by: JetFax M910e
Received: 10/22/01 11:47;    515 284 6333;    02/01/02 16:53;    JetFax #913;Page 5/12
12:33 OCT 22, 2001    tFax M910e;  Page 5
TEL NO: 515284622    #21801  PAGE: 5/12

unexpected expenses and failure to pay rent were foreseeable. The adequacy of Mr.

Stoppelmoor's complaint for breach of contract is governed by Rule 8(a) of the Federal Rules of

Civil Procedure, which simply require Mr. Stoppelmoor to provide a "short and plain statement

of the claim showing that the pleader is entitled to relief." Rule 8(a)(1), Fed. R. Civ. P. *See*

*Brown v. North Central F.S., Inc.*, 173 F.R.D. 658, 674 (N.D. Iowa 1997). This is a liberal

notice-pleading requirement that merely requires the plaintiff to put the defendant on notice of

the grounds for which the plaintiff seeks relief. Rule 8(a)(2), Fed. R. Civ. P. *See also Clausen &*

*Sons, Inc. v. Theo. Hamm Brewing Co.*, 395 F.2d 388, 390 (8th Cir. 1968). In determining

whether a plaintiff has met this minimum standard, courts have looked to whether the plaintiff

has alleged the terms of a contract between the parties, how they were breached, and the damages

that resulted. *Brown*, at 674 (holding plaintiffs sufficiently pleaded contract claim when they

"alleged the terms of the contracts they allege were breached, the manner in which they were

breached, and that [they] 'have suffered damages' as a result.) *See also Sky Technology*

*Partners, LLC v. Midwest Research Institute*, 125 F.Supp.2d 286, 298 (S.D.Ohio 2000) (holding

that "the plaintiff had plead [sic] sufficient facts to enable defendants to respond to the breach of

contract claim" when they "set forth the material terms of the alleged agreement."); *Coddington*

*v. Adelphi Univ.*, 45 F.Supp.2d 211, 218 (E.D.N.Y 1999) (finding pleadings for certain contracts

insufficient, "[t]he existence of a contract is premised upon the presence of consideration, i.e.,

either a benefit to the promisor or a detriment to the promisee."); *Hoopla Sports and*

*Entertainment, Inc. v. Nike, Inc.*, 947 F.Supp 347, 356 (N.D.Ill. 1996) (finding complaint for

breach of contract insufficient where plaintiff did not identify the consideration it was to provide

under the terms of the agreement); *Bartell v. Onbank, Onbank & Trust Co.*, 1996 WL 421189

Received: 10/22/01 11:47;    →    Fax №10o: Page 8
12:33 OCT 22, 2001                        TEL NO: 5152846220    #21801  PAGE: 8/12

(N.D.N.Y. 1996) ("In order to meet the pleading requirement of Fed.R.Civ.P. 8(a), plaintiffs bringing a breach of contract claim must, at the very least, plead the terms of the agreement upon which a defendant's alleged liability rests.")

In the three versions of counterclaims Mr. Stoppelmoor has filed, none of them explains what the terms of its alleged contract with the SBA were. At the hearing on this motion, Mr. Stoppelmoor's counsel has provided the Court with a copy of Mr. Stoppelmoor's small business loan from Farmer's Savings Bank, which was guaranteed by the SBA and which used an SBA form; however, Mr. Stoppelmoor's counsel never explained how and why this constitutes a contract between SBA and Mr. Stoppelmoor. It seems clear from the document that the SBA provided something of value to Mr. Stoppelmoor, having guaranteed his loan payments to Farmer's Savings Bank in order to induce them to lend him money. On the other hand there is no indication from the document, the pleadings, or from the assertions of Mr. Stoppelmoor's counsel that Mr. Stoppelmoor provided anything of value to the SBA.

When queried what the consideration was for this alleged contract between Mr. Stoppelmoor and the SBA, Mr. Stoppelmoor's counsel answered "the consideration would be my client when he went ahead and signed the note," seemingly confusing the contract principle of acceptance with the principle of consideration. Black's Law Dictionary gives the following definition of "consideration":

> The inducement to a contract. The cause, motive, price, or impelling influence which induces a contracting party to enter into a contract. The reason or material cause of a contract. The interest, profit or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility, given, suffered, or undertaken by the other. . . It is a basic, necessary element for the existence of a valid contract that is legally binding on the parties.

Sent by: JetFax M910e    515 284 6333;    02/01/02 16:54;    JetFax_#913;Page 7/12
Received: 10/22/01 11:48;    -> Fax M910e;  Page 7
12:34 OCT 22, 2001    TEL NO: 515284622    #21801 PAGE: 7/12

Black's Law Dictionary   (citing Restatement, Second, Contracts, SS 17(1), 71).  The Iowa

Supreme Court adopts the definition of "consideration" used in the Iowa Civil Jury instructions:

"'Consideration' is either a benefit given or to be given to the person who makes the promise [or

some other person] or a detriment experienced or to be experienced by the person to whom the

promise is made [or some other person].  Where the contract provides for mutual promises, each

promise is a consideration for the other promise."  *Federal Land Bank of Omaha v. Woods*, 480

N.W.2d 61, 65 (Iowa 1992) (citing Iowa Civil Jury Instructions 2400.4 (1986)).

Mr. Stoppelmoor's counsel never explained to the Court why his client's signature was of

any value to the SBA.  Mr. Stoppelmoor's counterclaims allege that Mr. Stoppelmoor was

"assuming [a] mortgage owed to SBA by [the] previous business," but it is clear from the loan

agreement submitted by Mr. Stoppelmoor's own counsel that it was a new one and did not in any

way assure payments owed to the SBA from previous loans.  "When considering a motion for

judgment on the pleadings (or a motion to dismiss under Fed.R.Civ.P. 12(b)(6)), the court

generally must ignore materials outside the pleadings, but it may consider 'some materials that

are part of the public record or do not contradict the complaint,' as well as materials that are

'necessarily embraced by the pleadings.'" *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077,

1079 (8th Cir. 1999) (citing *Missouri ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107

(8th Cir. 1999) and *Piper Jaffray Cos. v. National Union Fire Ins. Co.*, 967 F.Supp 1148, 1152

(D.Minn 1997)).

The SBA's guarantee of Farmers Savings Bank's  loan to Mr. Stoppelmoor was, in fact,

an agreement, but it was an agreement between the SBA and Farmer's Savings Bank, with Mr.

Stoppelmoor as the third-party beneficiary.  *See Audio Odyssey, Ltd. v. United States*, 255 F.3d

Sent by: JetFax M910e                        515 284 6333;        02/01/02 18:54;    JetFax_#913;Page 8/12
    Received:  10/22/01 11:48;   ->  Fax M910e;  Page 8
    12:34 OCT 22, 2001                               TEL NO: 515284622                    #21801  PAGE: 8/12

512, 521 (8th Cir. 2001) (holding that recipient of SBA guaranteed loan is a third-party

beneficiary to the contract between the SBA and the lending institution.)  Nevertheless, after six

months and three sets of counterclaims, Mr. Stoppelmoor's counsel fails to allege any terms of

this agreement that the SBA breached.  Thus, this Court cannot entertain a claim against the SBA

for breach of contract, even under the liberal standard of notice pleading under Rule 8(a),

because Mr. Stoppelmoor has repeated failed to give the SBA notice of what agreement they

breached.

**B.    Action in Tort**

        Unlike an action in contract, for which the only obstacle to Mr. Stoppelmoor is to allege

an actual contract, Mr. Stoppelmoor faces several obstacles to bringing a claim against the

government in tort.  First, under the Federal Tort Claims Act ("FTCA"), the federal government

specifically refuses to waive its sovereign immunity against suit for any tort arising out of

misrepresentation.  Second, even if Mr. Stoppelmoor can allege a tort claim not prohibited by the

FTCA, he is barred from suing for any economic damages in tort under the economic loss

doctrine.  As discussed below, Mr. Stoppelmoor did not clear either of these hurdles.

**1.    Sovereign Immunity and Duty**

        While the SBA is authorized "to sue and be sued" under 15 U.S.C. § 634(b)(1), this

waiver is limited by the FTCA with regard to tort claims.  "In order to place torts of 'suable'

agencies . . . upon precisely the same footing as torts of 'nonsuable' agencies, . . . Congress,

through the FTCA, limited the scope of sue-and-be-sued waivers . . ." *FDIC v. Meyer*, 510 U.S.

471, 476 (1994) (internal quotation marks omitted).  Section 2679(a) of the FTCA states:

        The authority of any federal agency to sue and be sued in its own name

Sent by: Jetrax M910e                    313 284 6800;        02/01/02 16:54;    Jetrax #910;Page 9/12
Received:  10/22/01 11:49;     ->  Fax M910e;  Page 9
12:35 OCT 22, 2001                              TEL NO: 515284622          #21801  PAGE: 9/12

shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title, and the remedies provided by this title in such cases shall be exclusive.

28 U.S.C. § 2679(a).  "Therefore, for tort claims that may be brought under 1346(b) against government agencies, the FTCA provides the exclusive remedy." *Audio Odyssey*, at 522.  Under 28 U.S.C. § 2680(h), no remedy is provided for claims arising out of misrepresentation.

The Supreme Court has made it clear that "the duty to use due care in obtaining and communicating information upon which [a] party may reasonably be expected to rely in the conduct of his economic affairs" falls within the misrepresentation clause of the FTCA. *United States v. Neustadt*, 366 U.S. 696, 706 (1961).  The Eighth Circuit has applied this principle to claims against the government for faulty appraisals given by government agencies, stating that they are "based on the communication of misinformation . . . and not on an undertaking by [government] officials which was performed in a negligent manner." *Bonuchi v. United States*, 827 F.2d 377, 378 (8th Cir. 1987).

Conversely, the Eighth Circuit has found that when a cause of action arises out of a "breach of regulatory duty [that] does not depend on the transmission of erroneous information as an essential element" it is not barred under the FTCA. *Appley Brothers v. United States*, 7 F.3d 720, 728 (8th Cir. 1993).  In *Appley Brothers*, the Eighth Circuit held that the plaintiff's claim was based on the government's duty to inspect and therefore outside the bar of the FTCA. Furthermore, in *Audio Odyssey*, the Eighth Circuit allowed tort claims against the SBA because the SBA neglected to carry out certain mandatory procedures set forth in its Standard Operating Procedure Manual.

This Court has no basis to hold that Mr. Stoppelmoor's claims fall within the scope of

-8-

Sent by: JetFax M910e                515 284 6333;           02/01/02 16:53;    jetfax #313;page 10/12
Received: 10/22/01 11:49;       --> .   ax M910e;   Page 10
    12:35 OCT 22, 2001                      TEL NO: 515284622                  #21801  PAGE: 10/12

*Appley Brothers* and *Audio Odyssey*.  In all three sets of Mr. Stoppelmoor's counterclaims, he

contends that the SBA wronged him by failing to inform him of the deficiencies in the business

he was buying.  His counsel asserted at the hearing on the motion that "[i]f [the SBA] has

knowledge that would prevent this company, ABC Plastics, to operate in an inefficient manner,

they should advise."  After three sets of counterclaims and six months, Mr. Stoppelmoor has

never identified any specific regulatory duties that the SBA neglected.  On October 11, 2001, the

same day this Court was to hear the parties on what duties the SBA owed to Mr. Stoppelmoor, a

Second Amended Counterclaim was filed alleging that under 15 U.S.C. § 644, the SBA "had a

duty to provide ABC with 'the maximum practicable opportunity' for business success." Second

Amended Counterclaim ¶ 16.  This is, in fact, a very selective quote from a part of the SBA

authorization statute that governs government procurement.  Nonetheless, even if Mr.

Stoppelmoor accurately cited a part of the statute that similarly expressed SBA's purpose, it

would not a mandatory regulatory duty.   The specific prohibition of misrepresentation claims

under the FTCA cannot be abrogated by an expression of an agency's general purpose, the FTCA

is the exclusive waiver of sovereign immunity for tort claims against the federal government.  28

U.S.C. § 2679(a).  *See also Audio Odyssey*, at 522.  Thus, Mr. Stoppelmoor has alleged no duty

or breach by the SBA for which the federal government has waived sovereign immunity under

the FTCA.

2.    **Economic Loss Doctrine and Damages**

        Even if Mr. Stoppelmoor alleged a tort claim that he could properly bring against the

federal government, he does not plead any damages that are not barred in tort by the economic

loss doctrine.  "The well-established general rule is that a plaintiff who has suffered only

Sent by: JetFax M910e       515 284 6333;      02/01/02 16:55;  JetFax_#913;Page 11/12
    Received:  10/22/01 11:49;    ->  Fax M910e;  Page 11
    12:35 OCT 22, 2001                        TEL NO: 5152846229              #21801  PAGE: 11/1

economic loss due to another's negligence has not been injured in a manner which is legally

cognizable or compensable." *Nebraska Innkeepers, Inc. v. Pittsburgh-Des Moines Corp.*, 345

N.W.2d 124, 126 (Iowa 1984).  Furthermore, Iowa courts state that "the line to be drawn is one

between tort and contract rather than between physical harm and economic loss." *American Fire*

*and Casualty Co. v. Ford Motor Co.*, 588 N.W.2d 437, 439 (Iowa 1999) (quoting *Nelson v.*

*Todd's Ltd.*, 426 N.W.2d 120, 125 (Iowa 1988)).

When Mr. Stoppelmoor's counsel was queried about whether his client had damages that

were not excluded by the economic loss doctrine, he responded "[t]he damages we would have

specifically would be loss of profit, and we would have loss of equipment, loss of property,

business property, and believe those would be the three main ones."  Later on, Mr.

Stoppelmoor's counsel was asked about the equipment and business property, and he

acknowledged that it was all property that came with the business his client took over.

These facts make it clear that Mr. Stoppelmoor cannot allege any damages in tort that are

not barred by the economic loss doctrine.  Contrary to the belief of his counsel, lost profits fall

within the economic loss doctrine.  As for Mr. Stoppelmoor's equipment and business property,

they were acquired in conjunction with the SBA's allegedly tortious behavior, thus Mr.

Stoppelmoor cannot claim damages to that equipment and property are anything more than

damages to an economic expectancy.  Recovery is limited to a contract action if the loss was

merely a foreseeable result from the failure of a product to work properly and thus leading only

to disappointed expectations. *American Fire and Casualty Co.*, at 439.  Hence, it is clear that Mr.

Stoppelmoor has suffered no damages for which he can sue the SBA in tort.

Sent by: JetFax M910e          515 284 6333;     02/01/02 16:55;  Jetfax #913;Page 12/12
   Received: 10/22/01 11:50;     ->  Fax M910e;  Page 12
   12:36 OCT 22, 2001               TEL NO: 515284622          #21801  PAGE: 12/12

## IV. Order

The SBA's motion is granted and Mr. Stoppelmoor and ABC's third-party counterclaims against the SBA are dismissed with prejudice.  The Court remands this case back to Iowa District Court for Johnson County.

IT IS SO ORDERED.

Dated this ____22nd____ day of October, 2001.


_Robert W. Pratt_

ROBERT W. PRATT
U.S. DISTRICT JUDGE